## SHAW v. BRENNAN et al.   (No. 2341.)

Court of Civil Appeals of Texas. El Paso.
Dec. 12, 1929.

Rehearing Denied Jan. 9, 1930.

Wm. H. Flippen and John T. Gano, both of Dallas, for appellant.

J. N. Townsend and H. E. Kenny, both of Dallas, for appellees.

WALTHALL, J. Thomas P. and Earl J. Brennan, appellees, brought this suit against appellant, C. L. Shaw, growing out of the performance of the following contract:

"Dallas, Texas, Sept. 25th, 1924.

"This agreement made and entered into this 27th day of September, 1924, between C. L. Shaw, Thos. P. Brennan, and Earl J. Brennan, all of Dallas county, state of Texas. The said C. L. Shaw is under contract with the Baker Company, a corporation of Texas, to do certain concrete construction work and brick work in connection with the construction of the Baker Hotel, to be erected upon the site of the former Oriental Hotel, located on the southeast corner of Akard and Commerce streets, Dallas, Texas.

"The contract price of the concrete and brick work is $500,000; contract is dated the 9th of September, 1924, signed by C. L. Shaw and T. B. Baker, president of the Baker Co., state of Texas.

"Prior to the date of the above, C. L. Shaw entered into a contract with the Baker Company to wreck and remove from the former Oriental Hotel site, the building as was formerly known as the Oriental Hotel.

"At this time the work of the Oriental Hotel is practically completed, and in consideration of the services rendered by the said Thos. P. Brennan and Earl J. Brennan the said C. L. Shaw does hereby acknowledge and assign to the said Thos. P. Brennan and Earl J. Brennan an undivided one-half interest of the profits derived from said wrecking, either from sale of materials from the wreck building or in salvage materials taken from the building and not yet sold, except such brick taken from the wrecking and used by C. L. Shaw in the construction of the brick work portion of said contract heretofore mentioned.

"It is understood and mutually agreed that the sum of $310,000.00 of contract price is for the purpose of this agreement allotted to the execution and construction of the concrete work as contemplated by the above mentioned contract.

"It is understood and agreed that the sum of $190,000.00 of the contract price is allotted from said total contract for the execution and construction of the brickwork.

"In consideration of the services rendered by Thos. P. Brennan and Earl J. Brennan, such as figuring, laying out, planning, and supervising and assisting in ordering and purchasing of materials, machinery, small tools, equipment, etc., and assisting and performing the execution of the concrete work, it is hereby understood and agreed that the said C. L. Shaw hereby acknowledges and assigns an undivided one-half interest in all profits or losses, together with one-half interest in all lumber, equipment, tools, machinery, and materials required or purchased or contracted for in connection with the concrete work.

"It is further understood that C. L. Shaw will furnish all money required to carry on work in accordance with the contract entered into with the Baker Co. For such financing it is understood no charge will be made against concrete work.

"It is further understood and agreed that all orders and bills for materials, equipment, machinery, tools, and all other items required for the concrete work shall be approved by Earl J. Brennan before being purchased or paid.

"Earl J. Brennan is to keep the accounts of the concrete work and all bills and invoices and other items shall bear his approval before becoming valid. The books are to be kept in the office of C. L. Shaw.

"It is further understood that none of the materials, machinery, tools, equipment brought and charged as items of cost in connection with the concrete work shall be sold, removed or disposed of without the mutual consent of the parties in this agreement.

"It is understood when work is completed and all items of cost in connection with the concrete work have been paid, a statement of final cost shall be prepared by Earl J. Brennan and this statement shall be a basis of a settlement between the parties of this agreement.

"The profits of this agreement shall be disbursed at such time it is reasonably sure that there will be no losses incurred on the concrete work.

"It is understood and agreed that the said C. L. Shaw is to approve all transactions as well as any developments on the job or in the office.

"If there is a back charge of $8,500 from the Gilsonite Contracting Co., this is to be deducted from the concrete work.

"The signatures of the parties mentioned in this agreement constitute a binding agreement between them."

Appellees allege that subsequent to the making of said contract the parties thereto added additional concrete work, as extras, the sum of $8,829.07, making the total contract price for the concrete work $318,829.07; that the cost of the concrete work was $232,274, and a profit earned of $86,570.01, of which they were

**1094**

entitled to receive one-half, $43,285; that they had been paid $40,000, leaving a balance due them on the concrete work of $3,285; that the machinery and equipment bought were of the market value of $5,600 at the completion of the job, of which they were entitled to receive one-half, the sum of $2,800; that appellant removed said machinery and equipment from said building without their consent, and converted same to his own use and benefit. Appellees allege a performance of said contract on their part, and pray for judgment in the aggregate sum of $6,085, interest and costs.

Appellant answered by general denial; by special answer he admitted the contract price for the erection of said concrete work to be $321,571.34; admitted that the equipment, machinery, etc., had a value of $5,995 at the completion of said work. As we understand his answer, without stating it, it alleges that the cost of the concrete work was $324,120, less the $80,000 that had been divided by the parties under the contract during the construction of the concrete work, instead of $232,274.08, as alleged by appellees. He claimed an allowance for the difference between new billet and rolled steel, and for salaries to himself and his brother F. H. Shaw, and for additional sums for pay roll and material in completion of the work. He further answered that under the terms of the written contract the wrecking of the Oriental Hotel, on the site upon which the Baker Hotel was constructed, was involved between said parties, and that there was a loss on that work of $5,981.54, on each of the two jobs of wrecking the Oriental Hotel and the concrete work on the Baker Hotel, which losses he had borne, of which he was entitled to recover.

On special issues submitted the jury found:

(1) It was not proper for the appellee to pay out the additional sums for payroll and material in the completion of the Baker Hotel concrete job.

(2) (Conditional and not answered.)

(3) The sum of $2,309.39, paid out by appellant to T. B. Baker in settlement of the claim made by T. B. Baker for reduction of the contract, for the difference between new billet and rerolled steel, was a proper charge against the Baker concrete job.

(4) The salary of $925 paid F. H. Shaw was not a proper charge against the Baker Hotel concrete job.

(5) The sum of $3,700 paid appellant was not a proper charge against the Baker Hotel concrete job.

(6) It was not the agreement of the parties to the contract that the losses on the Oriental Hotel wrecking job should be borne equally by the parties.

The court entered judgment that appellant take nothing by his cross-action, and that appellees have judgment for $5,406.89.

**Opinion.**

Appellant makes the contention under his first four propositions, grouping them, to the effect that appellees, in their direct testimony, offered no evidence to show that appellant had received any money paid to him on the Baker Hotel concrete job, but rested their case on testimony tending to show that the amount of the expenses and costs on the concrete job was less than the contract price, and concludes therefrom that, having pleaded the general denial, there was no necessity for appellant to specially allege that he had not been paid.

It is sufficient to say that appellees' petition made no such allegation necessitating such proof, and to which the general denial could have reference as denying that fact. Appellant was the contractor in the construction of the Baker Hotel, and it is nowhere suggested in the pleadings, or proof, or issues submitted, that the performance of the contract between appellant and appellees was conditioned that appellant should receive or have paid to him any money on the Baker Hotel contract. On the contrary, appellee pleaded that: "It was further agreed between plaintiffs and defendant in said contract that the defendant should furnish all money required to carry on the work in accordance with the contract entered into with the Baker Company."

The contract, made a part of the petition, bears out the above statement in the petition in substantially the same language. So far as appellee was concerned, it was immaterial from what source appellant was to get the money to finance the concrete work. While appellee Earl Brennan was testifying as a witness, appellees offered in evidence, over objection, a statement from appellant covering the machinery and equipment and small tool account, he having theretofore testified that appellees had received the statement from appellant "in the matter of arriving at a settlement of the dispute between them," the objection being, as in the bill of exception, that same was immaterial, irrelevant, "was received prior to the filing of the suit, and at a time when they were trying to reach an agreement and settlement, and had been so received in the course of said parties arriving at a settlement of the dispute."

The statement showed a list of the several articles on hand after the completion of the concrete work, with the values of each item, aggregating $5,995. The statement was received by appellees, apparently, in reply to a statement sent appellant by appellees, giving the items of the machinery, equipment, etc., and stating the several values, and requesting that appellant check same and remit the amount, as shown, of $6,477.49. The proposition, in addition to the objections to its introduction stated in the exception, is that

the statement was offered "after plaintiff had rested their cause, and such testimony, so offered, not being in answer to anything brought out by the defendant."

We think no reversible error is shown. The contract provides the appellant assigns to appellees a one-half interest in all lumber, equipment, tools, machinery, and machinery required or purchased in construction with the concrete work. Earl J. Brennan was to keep the accounts of such concrete work, none of such material or equipment was to be removed or disposed of without mutual consent of the parties, and at the conclusion Earl J. Brennan was to prepare a statement of the final cost, and such statement was to be a basis of settlement between them. The statement apparently embraced such items and their costs and values.

The record shows that, subsequent to its introduction by appellees, appellant introduced the same statement, with the statement of appellant's counsel, accompanying its introduction: "Counsel states the plaintiff is claiming here the value of this equipment is $5,600. I am giving them, not only full value, but more value than they are claiming on it." In appellant's special answer, in his "statement of the work performed and the cost and expenses thereof" is contained the item, "equipment, $5,995."

The court did not submit to the jury for their finding the value as to said "equipment," nor the amount of the undivided profit on the concrete work sued for, but entered judgment in favor of appellees in the aggregate sum of $5,406.89, without indicating the value or the amount of the undivided profits sued for, or the value of the equipment—that is, the lumber, machinery, etc.—alleged to have been converted, or whether any interest prior to the judgment was allowed. It is not made to appear, as claimed, that the court in the judgment put a greater value on the equipment than the value sued for.

Appellant submits that the judgment is excessive. The record does not show the judgment to be excessive. We have found no reversible error, or ground for reforming the judgment as being excessive.

The case is affirmed.

### On Motion for Rehearing.

Appellant, in his motion for rehearing, insists that it was necessary for appellee to allege and prove that appellant had received the money contracted to have been paid to him on his Baker Hotel contract, and for which, he insists, an accounting in part is sought; that when the contract for the concrete work was introduced, showing an assignment by appellant to appellee of an undivided interest in all profits or losses, the contract established, as a matter of law, the necessity for appellees to allege and prove the receipt by appellant of the money on the Baker Hotel contract. Appellees' suit is based on their contract with appellant for the concrete work on the Baker Hotel. Appellant had the contract for the work on the Baker Hotel, and sublet the concrete work to appellees for the consideration and on the terms and conditions stated. There is nothing in the contract for the concrete work making the payments thereunder conditioned on the payment to appellant of the money on his Baker Hotel contract. But if, by implication of law, as suggested, or otherwise, it could be said that the profits or losses could not be estimated until appellant had received the money on the Baker Hotel contract, and for that, or for any reason, it was necessary that such fact should be made to appear, it would not follow, we think, that appellees should have alleged or proved the receipt of such money, unless made a condition in the contract. The fact was peculiarly within the knowledge of appellant. Appellant waived all exceptions.

The judgment is not excessive. As we view it, the figures upon which the judgment is based are as follows:

| | | |
|---|---|---|
| Original contract for concrete work | | $310,000 00 |
| Extras on concrete work | | 8,829 00 |
| Total contract price | | $318,829 00 |
| Cost concrete work | $232,274 08 | |
| Added under issue 3, as found | 2,309 39 | |
| Total cost | $234,583 47 | |
| Profits | 84,245 60 | |
| Profits distributed prior to suit | 80,000 00 | |
| Undistributed profits | $ 4,245 60 | |
| Value of machinery, tools, etc. | 5,600 00 | |
| Total undistributed profits | $ 9,845 60 | |
| One-half profits due appellees | $ 4,922 80 | |
| Interest sued for | 484 09 | |
| Amount of judgment | $ 5,406 89 | |

The amounts above find support in the evidence.

The motion is overruled.